Jack M. HENSON, Movant-Appellant,

v.

STATE of Missouri, Respondent-Respondent.

No. SD 34496

Missouri Court of Appeals,
Southern District,
**Division One.**

Filed: March 30, 2017

Application for Transfer to Supreme
Court Denied April 21, 2017

Application for Transfer Denied
June 27, 2017

Attorney for Appellant: Samuel Henderson of St. Louis, MO.

Attorney for Respondent: Chris Koster, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., of Jefferson City, MO.

JEFFREY W. BATES, P.J.—
OPINION AUTHOR

Jack Henson (Henson) filed his Rule 24.035 *pro se* motion (the *pro se* motion) in the Circuit Court of Pulaski County seeking post-conviction relief from his criminal convictions in Case No. 10PU-CR00306-01 (the 2010 Pulaski County case).[1] Henson's retained counsel filed an amended motion (the amended motion) presenting four claims of alleged ineffective assistance of plea counsel arising from Henson's guilty pleas in the 2010 Pulaski County case. The amended motion also included three claims of alleged ineffective assistance of plea counsel arising from Henson's guilty pleas in Case No. 13PH-CR00136-01 (the 2013 Phelps County case).

The motion court dismissed as untimely all claims involving Henson's convictions in the 2010 Pulaski County case because the motion court determined that the *pro se* motion was not filed within 180 days of Henson's delivery to the Department of Corrections (DOC). The motion court also denied relief on all claims involving Henson's conviction in the 2013 Phelps County case because those sentences were not imposed in Pulaski County. Henson appealed and presents six points for review. Finding no merit in any of them, we affirm the motion court's order.

### Standard of Review

Appellate review of an order denying a motion for post-conviction relief is limited to a determination of whether the court's findings of fact and conclusions of law are clearly erroneous. Rule 24.035(k); *Soto v. State*, 226 S.W.3d 164, 166 (Mo. banc

---

1. All rule references are to Missouri Court Rules (2016). Although this is a Rule 24.035 case, we will at times cite to cases interpreting identical substantive provisions of its counterpart, Rule 29.15, because "case law interpreting a provision that is identical in both rules applies equally in proceedings under either rule." *Vogl v. State*, 437 S.W.3d 218, 224 n.7 (Mo. banc 2014).

2007). The clearly erroneous standard is satisfied only if, after a review of the entire record, this Court is left with a definite and firm impression that a mistake was made. *Soto*, 226 S.W.3d at 166.

### Factual Background

■ Before setting out the relevant facts, a brief review of the mechanics of criminal sentencing is helpful:

A sentencing court has the authority to suspend both the execution of a sentence as well as the imposition of a sentence. *See* sections 557.011.2(3) and 557.011.4(3), RSMo 2000. A suspended *execution* of sentence suspends the defendant's prison time and the defendant is put on probation and has a criminal conviction on his record even if he successfully completes his probation. *Edwards v. State*, 215 S.W.3d 292, 295 (Mo. App. 2007). A suspended *imposition* of sentence, however, defers the sentencing as well as the entry of a conviction on defendant's record. *Id.* When an offender on a suspended execution of sentence violates his probation, the court may "execute" the suspended sentence and send him to prison for the term specified at the original sentencing. *Id.* When an offender is on probation with a suspended imposition of sentence, the court may revoke his probation and impose any sentence within the limit set by law for the offense. *Id.* An offender on a suspended imposition of sentence who successfully completes probation does not have a criminal conviction on his record, whereas an offender with a suspended execution of sentence has a criminal record for that conviction regardless of whether he successfully completes probation. *See Id.*

*Hoskins v. State*, 329 S.W.3d 695, 698 n.3 (Mo. banc 2010) (emphasis in original). The relevant events relating to Henson's convictions and DOC deliveries are set out below in chronological order.

October 26, 2010:

Henson entered guilty pleas to three charges in Case No. 10PU-CR00306-01, the 2010 Pulaski County case. The trial court suspended imposition of all sentences and ordered Henson to complete five years of probation.

November 1, 2010:

Henson entered a guilty plea in 10PH-CR01131, a Phelps County case. The trial court suspended imposition of that sentence and ordered Henson to complete five years of probation.

April 26, 2011:

The trial court found Henson had violated his probation in the 2010 Pulaski County case. The trial court entered sentences of 7 years, 7 years, and 15 years for the three charges in that case (with the 7-year sentences concurrent to each other, but consecutive to the 15-year sentence, for a total sentence of 22 years). The court suspended execution of all sentences and ordered Henson to complete drug court.

September 14, 2011:

Henson entered guilty pleas in three new cases, with each case including charges for multiple felonies: 11PH-CR01149—Sentences of 10 years and 7 years entered (concurrent to each other, but consecutive to all other sentences); 11PH-CR01532—Two sentences of 10 years entered (concurrent to each other, but consecutive to all other sentences); 11PH-CR01533—Three sentences of 10 years entered (concurrent to each other, but consecutive to all other sentences).

The trial court revoked Henson's probation in the 2010 Pulaski County case and 10PH-CR01131. In the 2010 Pula-

ski County case, the trial court executed the 22-year sentence, stating "[t]hat's to be served." The trial court also executed a 4-year sentence in 10PH-CR01131 and ordered that it run consecutive to Henson's 22-year sentence. The trial court clarified that it was sentencing Henson "under 217.362 of the revised statutes of Missouri, the long-term drug treatment program." It further stated: (1) Henson was not guaranteed probation; (2) he was going to DOC for 56 years (the aggregate of all consecutive sentences entered up to that point); but (3) he had a chance to be withdrawn from DOC after one or two years if he successfully completed the program. The court concluded, "You are to be delivered to [DOC] for a combined total of 56 years."

September 22, 2011:

Henson was delivered to DOC.

November 19, 2012:

Henson successfully completed long-term drug treatment at DOC and was ordered to complete five years of probation.

August 12, 2013:

Henson entered three guilty pleas in the 2013 Phelps County case, and the trial court sentenced him to 7 years for each charge (concurrent with each other and concurrent with all other sentences). The trial court revoked Henson's probation for all prior convictions and executed a sentence of 56 years.

September 6, 2013:

Henson was delivered again to DOC (his first delivery for the 2013 Phelps

County case, and his second delivery for all cases prior to the 2013 Phelps County case).

February 5, 2014:

Henson filed the *pro se* motion in Pulaski County.

November 3, 2014:

Henson's retained counsel filed the amended motion in Pulaski County.

Additional facts necessary to the disposition of the case are included below as we address Henson's six points.

## Discussion and Decision

### Point 1

Henson's first point challenges the motion court's ruling that the *pro se* motion was untimely.[2] Rule 24.035 sets forth valid and mandatory time limits for the filing of a *pro se* post-conviction motion. **Dorris v. State**, 360 S.W.3d 260, 268 (Mo. banc 2012). "A person convicted of a felony on a plea of guilty and delivered to the custody of the department of corrections ... may seek relief in the sentencing court pursuant to the provisions of this Rule 24.035." Rule 24.035(a). "If no appeal of such judgment was taken, the motion shall be filed within 180 days of the date the person is delivered to the custody of the department of corrections." Rule 24.035(b).

Based on the timeline of relevant events set out above, Henson's *pro se* motion challenging his convictions in the 2010 Pulaski County case was not timely filed. Henson did not appeal that case, and he was first delivered to DOC to serve those sentences in September 2011 pursuant to the long-term drug treatment program. *See* § 217.362.[3] "The law is well-settled

---

**2.** On June 10, 2015, a hearing was held in the motion court on the State's motion to dismiss the *pro se* motion as untimely and on Hen-

son's amended motion, but Henson has not provided this Court with the transcript.

**3.** All statutory references are to RSMo Cum. Supp. (2013) unless otherwise specified.

that the time limitation for filing a motion for post-conviction relief begins to run upon a movant's *initial* delivery into the custody of [DOC]." ***State v. Gibbs***, 418 S.W.3d 522, 524 (Mo. App. 2013) (emphasis in original); *see also* ***Bond v. State***, 326 S.W.3d 828, 831 (Mo. App. 2010). This is the case even when the circuit court: (1) remands the movant to DOC so that he or she may enter a § 217.362 long-term drug treatment program; and (2) grants the movant probation when the program is completed. ***Hart v. State***, 367 S.W.3d 171, 174 (Mo. App. 2012). Although Henson successfully completed his long-term drug treatment program and was released from DOC on probation in November 2012, his *initial* delivery to DOC in September 2011 triggered the 180-day time limit in which he had to file a *pro se* Rule 24.035 motion. Therefore, Henson's *pro se* motion was due to be filed in March 2012, but it was not filed until February 2014, nearly two years later.

Henson argues that, although he was sentenced by the circuit court to serve 56 years in prison, those sentences were not actually being executed when he was delivered to DOC. To support that argument, Henson relies upon several DOC and Phelps County documents that purport to show he was serving only a 34-year sentence in DOC (*i.e.*, he was not actually serving the 22-year sentence in the 2010 Pulaski County case, so he had not been delivered to DOC for that sentence). Even if we accept Henson's argument as true—that he was not serving the sentence for the 2010 Pulaski County case once he had been delivered to DOC—his argument still fails.

Henson was sentenced to the § 217.362 long-term drug treatment program in DOC for the 2010 Pulaski County case in a multi-count judgment that also imposed sentences in four other cases. In *Swallow*

*v. State*, 398 S.W.3d 1 (Mo. banc 2013), our Supreme Court addressed the timeliness of a *pro se* Rule 24.035 motion involving a judgment in which concurrent sentences for two counts had been imposed, but the execution of one of the sentences had been suspended. *Swallow*, 398 S.W.3d at 2. The Supreme Court held that the movant's delivery to DOC to serve one sentence of a multi-count judgment in which both counts were final convictions triggered the 180-day time limit for the movant to file a *pro se* motion challenging the conviction or sentence for both convictions imposed by that judgment. *Id.* at 6.

That same principle was applied in ***Langhans v. State***, 501 S.W.3d 535 (Mo. App. 2016). There, the movant's sentences had been ordered to run consecutively, rather than concurrently as in ***Swallow***. ***Langhans***, 501 S.W.3d at 539. Based upon that factual difference, the movant in ***Langhans*** argued that the timing rule in ***Swallow*** should not be applied. *Id.* The court found that argument lacked merit:

> While we acknowledge the factual distinction offered by Langhans, <u>Swallow</u> clearly rejects allowing movants to raise Rule 24.035 claims at each "subsequent delivery" in a judgment containing consecutive sentences. <u>Id.</u> at 5. Indeed, the Supreme Court of Missouri called this an "absurd result" that would necessitate duplicative motions at the start of each new sentence to resolve any Rule 24.035 claims against a single judgment—a result counter to the purpose of Rule 24.035. <u>Id.</u> at 4-5.
>
> Further, adopting Langhans's argument—that a movant who is serving consecutive sentences with the Missouri Department of Corrections under a single judgment must file a Rule 24.035 motion at the start of each new sentence—would result in the possibility of inconsistent rulings on subsequent

claims for post-conviction relief and in successive motions to fully resolve the legality of a single judgment. Swallow's concerns pertaining to inconsistent rulings and successive motions apply equally to Rule 24.035 motions filed upon subsequent deliveries on consecutive sentences. As a result, we hold that a movant, whose unappealled final judgment includes consecutive sentences on multiple felony counts, must raise any known Rule 24.035 claims within 180 days of his or her initial delivery to the Missouri Department of Corrections on any such counts contained within the judgment.

*Langhans*, 501 S.W.3d at 539-40.

The timing principle applied in *Swallow* and *Langhans* also applies to the facts of this case. All of the sentences imposed on Henson in the 2010 Pulaski County case were final convictions. Henson concedes that he was delivered to DOC in September 2011 to serve the 34-year consecutive sentences imposed after convictions on other counts in the judgment not involving the § 217.362 long-term drug treatment program. Therefore, *Swallow* required Henson to file the *pro se* motion, raising any claims he could assert as to each of the final convictions included in the September 2011 judgment, within 180 days of his initial delivery to DOC on September 22, 2011. *See Swallow*, 398 S.W.3d at 6; *Langhans*, 501 S.W.3d at 539. Accordingly, Henson's *pro se* motion filed in February 2014 was untimely, and the motion court was compelled to dismiss it. *Stanley v. State*, 420 S.W.3d 532, 540 (Mo. banc 2014). Point 1 is denied.

### Point 2

██ Henson's second point argues that, even if the *pro se* motion was untimely, his amended motion sufficiently pled the rare circumstance of "active third-party inter-

ference" to excuse the late filing of the *pro se* motion. This point lacks merit.

██ It was Henson's burden to plead and prove the timeliness of his *pro se* motion, and there are only three methods by which he could have done so. *Green v. State*, 481 S.W.3d 589, 591 (Mo. App. 2015); *Lenoir v. State*, 475 S.W.3d 139, 142 (Mo. App. 2014). As our Supreme Court explained in *Dorris v. State*, 360 S.W.3d 260 (Mo. banc 2012):

> The movant must allege facts showing he timely filed his motion and meet his burden of proof by either: (1) timely filing the original *pro se* motion so that the time stamp on the file reflects that it is within the time limits proscribed in the Rule; (2) alleging and proving by a preponderance of the evidence in his motion that he falls within a recognized exception to the time limits; or (3) alleging and proving by a preponderance of the evidence in his amended motion that the court misfiled the motion.

*Id.* at 267. The facts necessary to support the application of a recognized exception to the time limits must be alleged in the *pro se* motion itself. *Vogl v. State*, 437 S.W.3d 218, 226 (Mo. banc 2014). To come within the active interference by a third party exception, the movant must allege that: (1) he prepared his initial motion and did all that he reasonably could to ensure that it was filed on time; and (2) the late filing of the *pro se* motion resulted solely from the active interference of a third party beyond the movant's control. *Price v. State*, 422 S.W.3d 292, 307 (Mo. banc 2014); *see also Henderson v. State*, 372 S.W.3d 11, 14 (Mo. App. 2012) (noting that, in rare circumstances, courts have made an exception when the movant's *pro se* motion was not timely filed due to active interference by some third party). Henson's *pro se* motion did not allege the facts necessary to support the application of this exception. Point 2 is denied.

*Point 3*

Henson's third point contends the motion court clearly erred by failing to make findings on the merits of the claims in the amended motion relating to the convictions in the 2010 Pulaski County judgment. Because Henson failed to timely file a *pro se* motion challenging those convictions, he completely waived the merit-based adjudication of any claim that he could have raised in a Rule 24.035 motion. *See* Rule 24.035(b); *Dorris*, 360 S.W.3d at 268. When a *pro se* post-conviction motion is not timely filed, the motion court is required to dismiss the motion without ruling on the merits of the post-conviction claims. *Talley v. State*, 399 S.W.3d 872, 875 (Mo. App. 2013). Point 3 is denied.

*Point 4*

As noted above, Henson's amended motion also included three claims of alleged ineffective assistance of plea counsel arising from Henson's guilty pleas in the 2013 Phelps County case. In Point 4, Henson contends the motion court should have transferred those claims to Phelps County (the sentencing court) for adjudication, rather than simply denying relief. We disagree.

A Rule 24.035 motion must be filed "in the sentencing court." Rule 24.035(a); *Sabatucci v. State*, 326 S.W.3d 540, 541 (Mo. App. 2010). When a movant files a case in the incorrect division or circuit, § 476.410 RSMo (2000) provides that the court "shall transfer the case to any division or circuit in which it could have been brought." *Id.*; *see Nicholson v. State*, 151 S.W.3d 369, 370-71 (Mo. banc 2004). Rule 51.10 then requires the circuit court receiving the transferred action to treat the action "as if it had originated in the receiving court." *Id.* These rules apply to *pro se* motions for post-conviction relief that are filed in the incorrect court. *Nicholson*, 151 S.W.3d at

370-71. Here, however, Henson's *pro se* motion did not contain sufficient information to put the motion court on notice that he was challenging his convictions in the 2013 Phelps County case.

An inmate's Rule 24.035 motion must be filed "substantially in the form of Criminal Procedure Form No. 40." Rule 24.035(b). Form 40 is intended to serve as a procedural guide for movants attempting to file a motion for post-conviction relief. *White v. State*, 91 S.W.3d 154, 156 (Mo. App. 2002). "The reason for requiring compliance with Form 40 when seeking relief under [Rule 24.035] is to provide not only the state but also the trial court, and the appellate court on review, with an orderly and concise statement of the grounds on which movant bases his request for post-conviction relief." *State v. Owsley*, 959 S.W.2d 789, 797 (Mo. banc 1997) (internal quotation marks omitted). The third paragraph of Henson's Form 40 required him to state the "case number and the offense or offenses for which sentence was imposed[.]" The hand-written entry said: "10Pu-CR00306-01 Burglary 1st 15 yrs Burglary 2nd theft of firearm 7 yrs[.]" The eighth paragraph of Henson's Form 40 required him to concisely state "all the claims known to you for vacating, setting aside or correcting your conviction and sentence[.]" The hand-written entry said:

(a) Inefficient councel [sic]—Not stating facts about mental health No change of venue, Promised me 10 years

(b) the victim to my other case was long term friendship with prosecutor and 25th circuit court he [illegible] them to give me all my time as much as possible

(c) Excessive punishment—By running sentences consecutively

The recitation of claims in paragraph 8 also did not alert the motion court that Henson was attempting to challenge sen-

tences entered in Phelps County, rather than Pulaski County. We recognize that a *pro se* motion is intended to be a relatively informal filing, but we cannot fault the motion court for failing to transfer the *pro se* motion which, on its face, did not provide the motion court with enough information to understand that any Phelps County sentences were being challenged.

The first time that Henson clearly raised challenges to his Phelps County sentences was in the amended motion filed by counsel on November 3, 2014. At that point, however, more than 180 days had elapsed since Henson's delivery to the DOC. Because the claims relating to the Phelps County sentences first raised in the amended motion were untimely, the transfer procedure described in *Nicholson*, 151 S.W.3d at 370-71, has no application because all such claims were completely waived. *See* Rule 24.035(b); *Dorris*, 360 S.W.3d at 268. Therefore, the motion court did not clearly err by not transferring the adjudication of Henson's claims involving the 2013 Phelps County sentences to that forum. Point 4 is denied.

### Point 5

Henson's fifth point challenges the trial court's failure to make merit-based findings on his challenges to the 2013 Phelps County sentences. Based on our determination in Point 4 that Henson did not present any timely challenges in his *pro se* or amended Pulaski County motions to the Phelps County sentences, Henson has completely waived any merit-based adjudication of those claims. *See* Rule 24.035(b); *Dorris*, 360 S.W.3d at 268. Point 5 is denied.

### Point 6

■ Henson was sentenced on felony stealing charges in both Pulaski and Phelps Counties. For the first time on appeal, Henson contends those sentences should have been classified as misdemean-

ors pursuant to the rationale of *State v. Bazell*, 497 S.W.3d 263 (Mo. banc 2016). Because these claims were not raised in a timely Rule 24.035 motion, they are completely waived in this post-conviction proceeding. *See* Rule 24.035(b); *Hoskins*, 329 S.W.3d at 699 (movant waived claim that sentencing court lacked the authority to run movant's sentences consecutively by not including that claim in his Rule 24.035 motion, and plain error review of such an omitted claim is not permitted). Point 6 is denied.

After reviewing the entire record, we are not left with a definite and firm belief that a mistake has been made. *See* Rule 24.035(k); *Soto*, 226 S.W.3d at 166. We affirm the motion court's dismissal of Henson's post-conviction claims. *See Johnston v. State*, 391 S.W.3d 905, 909 (Mo. App. 2013); *Talley*, 399 S.W.3d at 877.

GARY W. LYNCH, J.—CONCUR

DON E. BURRELL, J.—CONCUR